# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### December 9, 2003 Session

## EDWARD PINCHON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-A-307     J. Randall Wyatt, Jr., Judge**

---

### No. M2003-00816-CCA-R3-PC - Filed January 28, 2004

---

The petitioner appeals the dismissal of his petition for post-conviction relief as time-barred, arguing that the post-conviction court erred for failing to find that the one-year statute of limitations was tolled due to his mental incompetence, or, in the alternative, for failing to find that his petition was timely because it was filed within one year from the date mandate issued. Following our review, we affirm the dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

David G. Hirshberg, Nashville, Tennessee, for the appellant, Edward Pinchon.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret T. Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The petitioner, Edward Pinchon, was convicted by a Davidson County Criminal Court jury of first degree murder in September 1999 and received a sentence of life imprisonment with the possibility of parole. His conviction was affirmed by this court on direct appeal on March 17, 2000, and on December 11, 2000, the supreme court denied his application for permission to appeal. See State v. Edward Pinchon, No. M1999-00994-CCA-R3-CD, 2000 WL 284071, at *1 (Tenn. Crim. App. Mar. 17, 2000), perm. to appeal denied (Tenn. 2000).

On January 3, 2002, the petitioner filed a *pro se* petition for post-conviction relief in the Davidson County Criminal Court, in which he asserted his petition had been mailed on December

28, 2001. Post-conviction counsel was appointed, and, on September 6, 2002, the State filed a motion to dismiss the petition on the basis that it was filed outside the one-year statute of limitations, which had expired on December 11, 2001. The petitioner responded by asserting that the petition was timely. In support, he relied on a note he had received in response to his inquiry of the Clerk of the Supreme Court about the status of his case, which read, "On 12/29/00, the case was mandated (closed) & jurisdiction was returned to the trial court. Nothing currently pending because the case is closed." The petitioner asserted the note caused him to believe he had one year from the date the case was mandated in which to file his petition for post-conviction relief. In the alternative, the petitioner asserted that the statute of limitations should be tolled on the basis of his mental incompetency.

The post-conviction court held a hearing on the State's motion to dismiss the petition on October 3, 2002, and February 26, 2003. The petitioner testified he attended Maplewood and Dede Wallace, which was a special needs school, and that he left school in the tenth grade. He said a fellow inmate in the prison library, who had helped him prepare his *pro se* petition, told him, based on the date contained in the message he had received from the Tennessee Supreme Court, that the petition was due on December 29, 2001, and would therefore "be good if [he] sent it in on the 28th."

The petitioner acknowledged on cross-examination his trial counsel had informed him in a letter that he was withdrawing his representation following this court's decision on direct appeal. The petitioner conceded he had therefore filed his Rule 11 application for permission to appeal to the supreme court himself, and had corresponded directly with the court in his attempts to gain information regarding the status of his case. He further acknowledged the court had sent him a letter informing him of the denial of his application for permission to appeal.

Chris Gowan, the academic counselor at the South Central Correctional Facility in Clifton, Tennessee, testified he had given the petitioner several Tests for Adult Basic Education, or TABEs, and the petitioner had consistently tested lower than the fifth grade level in reading ability, which meant his reading ability was "very limited." In his opinion, the petitioner's ability to read and follow instructions with respect to meeting a deadline would depend on how complicated the instructions were and whether the vocabulary was beyond his comprehension. On cross-examination, Gowan acknowledged the petitioner had not been appointed a conservator and had not been determined to belong in the DeBerry Special Needs Facility.

Dr. Lynn McRainey testified she was employed by Metro Schools as a school psychologist and also had a private practice as a psychological examiner. At the request of the petitioner's federal public defender, who had wanted her to determine the petitioner's level of intellectual functioning, she met with the petitioner for approximately two hours on November 16, 2002, to interview him and administer the third edition of the Wexler Adult Intelligence Scale test. In addition, she reviewed the petitioner's five previous psychological evaluations, which dated back to 1986, when the petitioner was in kindergarten. Dr. McRainey testified she determined that the petitioner had a full scale IQ score of 67, "which falls in the range of mild mental retardation." When asked if the petitioner was capable of understanding and following time deadlines, she replied:

It's my opinion that [the petitioner's] weaknesses are primarily in the area of language. He has a history of being certified as language impaired. His behavior in the assessment said to me that when he's given verbal directions, that's not the best way for him to get information. I think it would be difficult for him to be told deadlines or be told a time schedule and then carry out that schedule and act on that.

Dr. McRainey said she believed the petitioner was able to read a calendar but unable to plan ahead to meet a deadline. She testified that, nine times out of ten, the petitioner's IQ score would fall somewhere between 64 and 71; in her opinion, the petitioner's IQ had always fallen within that range. On cross-examination, she conceded she had no knowledge about the petitioner's familiarity with court processes and documents.

On March 4, 2003, the post-conviction court entered an order dismissing the petition for post-conviction relief. The court found that the statute of limitations had expired on December 11, 2001, one year from the date that the petitioner's application for permission to appeal was denied. The court additionally found that the petitioner had not met his burden of showing that the statute of limitations should be tolled due to his mental incompetence. With respect to this issue, the post-conviction court's order states in pertinent part:

After reviewing the record, the Court does not feel that the Petitioner has met his burden [of showing that the statute of limitations should be tolled due to mental incompetence under the standard enunciated in State v. Nix, 40 S.W.3d 459 (Tenn. 2001)]. The Court appreciates the Petitioner's relatively low reading and cognitive abilities, as demonstrated by the testimony of Mr. Gowan and Dr. McRainey. The Court, however, after reviewing the record and considering the entire circumstances of this case, is of the opinion that the Petitioner is legally competent in connection with the statute of limitations requirement.

The Court points out that the Petitioner was found to be mentally competent to stand trial, and Dr. McRainey indicated in her testimony that the Petitioner's mental ability has probably not changed significantly in his lifetime. The Court also points out that Mr. Gowan testified that the Petitioner is not incarcerated in a facility reserved for prisoners who have special needs or are unable to manage their day-to-day affairs. The final, and most convincing factors in the Court's opinion, are found in the various pleadings and correspondence prepared by the Petitioner during different stages of his case. These include a written appeal and supporting brief to the Tennessee Supreme Court, a federal habe[a]s corpus petition, and

letters concerning the above items. Based on this evidence, it is clear to the [C]ourt that, although the Petitioner has relatively low mental ability, he has the requisite mental capacity to understand his legal rights and liabilities to the extent necessary to participate in legal proceedings or, at the very least, understands his legal rights sufficiently enough to seek assistance in those proceedings. The Court, therefore, is of the opinion that [the] statute of limitations should not be tolled in this case.

## ANALYSIS

The petitioner contends the post-conviction court erred in dismissing his petition on the basis of the statute of limitations. He first argues that he presented clear and convincing evidence of his mental incompetence during the period in question, such that due process required the tolling of the statute of limitations. In support, he cites Gowan's testimony about his low level of reading ability and comprehension and Dr. McRainey's testimony about his low IQ and borderline mental retardation. The petitioner asserts the testimony of these witnesses establishes that it is unlikely he possessed the ability to understand the significance of a legal deadline. The State argues the petitioner failed to prove sufficient grounds to toll the statute of limitations.

Under the Post-Conviction Procedure Act of 1995, a claim for post-conviction relief must be filed "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred." Tenn. Code Ann. § 40-30-202(a) (2003). The 1995 Act contains a specific anti-tolling provision. Id. However, in Seals v. State, 23 S.W.3d 272, 279 (Tenn. 2000), our supreme court recognized that due process requires that the post-conviction statute of limitations be tolled during periods of a petitioner's mental incompetency. In State v. Nix, 40 S.W.3d 459, 463 (Tenn. 2001), our supreme court, addressing the issue of what specific standard of mental incompetence must be satisfied to require tolling, held that "due process requires tolling of the post-conviction statute of limitations only if a petitioner shows that he is unable either to manage his personal affairs or to understand his legal rights and liabilities." Id. The Nix court stressed that the burden is on the petitioner to include specific factual allegations in his petition to support his claim of mental incompetence. Id. at 464.

We agree with the post-conviction court that the petitioner failed to demonstrate mental incompetence requiring that the statute of limitations be tolled, under the standard set forth in Nix. None of the petitioner's proof established that he was either unable to manage his personal affairs or to understand his legal rights and liabilities. In fact, the evidence tended to establish just the opposite. The petitioner conceded he had been informed of trial counsel's withdrawal from his case following the decision by this court on his direct appeal, and he had, therefore, filed his application for permission to appeal to the supreme court *pro se*, albeit with the assistance of an inmate legal helper. He also acknowledged he had communicated directly with the supreme court in his attempts to learn the status of his case and had received notification from it of the denial of his application

for permission to appeal. Gowan testified the petitioner consistently tested under the fifth grade level in reading ability, and opined he would have difficulty in reading and understanding complicated directions with respect to meeting a deadline, but acknowledged that the petitioner had not been appointed a conservator or assigned to the DeBerry Special Needs Facility. Finally, Dr. McRainey testified the petitioner's total IQ was 67, which placed him in the category of borderline mental retardation. She noted from the petitioner's previous psychological reports that he had a particular deficiency in the area of language and opined it would be difficult for him to follow and meet a time schedule or deadline. However, she conceded she had no knowledge of the petitioner's familiarity with court documents and processes.

Nothing in these witnesses' testimony, or in Dr. McRainey's report which was included as an exhibit to her testimony, establishes that the petitioner was mentally incompetent under the standard set forth in Nix. Therefore, we conclude that the post-conviction court correctly declined to find that the statute of limitations should be tolled on the basis of the petitioner's mental incompetency.

The petitioner also argues his petition was timely, based on the fact that it was allegedly mailed within one year of the date mandate was issued in the case. He asserts that, given his "profound mental disability" and the message he received from the Supreme Court Clerk's Office stating that the case was mandated on December 29, 2000, "it was reasonable for [him] to conclude that the one (1) year statute of limitations began to run on this date (December 29, 2000, and not December 11, 2000)." We respectfully disagree.

The post-conviction statute makes it clear that the statute of limitations begins to run on the date that the final action is taken by the highest appellate court to which an appeal has been taken, which in this case was December 11, 2000, the date that the supreme court denied application for permission to appeal. This court has consistently held that the final action of the supreme court is the date of the filing of either the court's opinion or denial of application for permission to appeal. See Antonio Bonds v. State, No. W2003-00260-CCA-R3-PC, 2003 WL 22718186, at **1-2 (Tenn. Crim. App. Nov. 14, 2003), applic. for perm. to appeal filed (Tenn. Jan. 8, 2004); Jeffrey E. Dunlap, No. E2001-00189-CCA-R3-PC, 2001 WL 1231507, at *3 (Tenn. Crim. App. Oct. 16, 2001), perm. to appeal denied (Tenn. May 6, 2002). Furthermore, the December 29, 2000, date referenced in the note was obviously the date that this court, not the supreme court, issued a mandate in the case. See Kenneth P. Bondurant v. State, No. M2000-02287-CCA-R3-PC, 2002 WL 31487529, at *5 (Tenn. Crim. App. Oct. 30, 2002) (noting that Tennessee Rule of Appellate Procedure 42(a) does not contemplate a supreme court mandate when the supreme court denies an application for permission to appeal, but rather a mandate of the intermediate appellate court immediately following the supreme court's denial of application for permission to appeal). Because the petitioner failed to mail his petition within one year from the date that the supreme court denied application for permission to appeal, his petition was barred by the statute of limitations.

## **CONCLUSION**

We conclude that the one-year statute of limitations expired before the petitioner filed his petition for post-conviction relief. We further conclude that he failed to show due process required that the limitations period be tolled due to his mental incompetence. Accordingly, we affirm the post-conviction court's dismissal of the petition as time-barred.

_____
ALAN E. GLENN, JUDGE